## No. 33,192

THE HOME STATE BANK OF RUSSELL, *Appellant*, v. EMANUEL MIL-
BERGER, EVERETT M. WENTWORTH, as Administrator with the Will
Annexed of the Estate of Frances E. Hill, Deceased, and EVERETT
W. HILL, *Appellees*.

(72 P. 2d 1004)

Opinion filed
November 6, 1937.

*Jerry E. Driscoll,* of Russell, and *Kenneth W. Wagner,* of Topeka, for the
appellant.

*Oscar Ostrum, Frances K. Seeley,* both of Russell, and *John Tomerlin,* of
Oklahoma City, Okla., for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action on a promissory note which
the plaintiff held as collateral. Judgment was entered against the
maker without controversy. The controverted question of law in
the trial court and in this court turns on the legal significance at-
taching to the recitals and signature of the appellee on the back of
the note.

Briefly, the facts were these: On May 26, 1932, one Everett W.
Hill executed to the Home State Bank of Russell a chattel-mortgage
promissory note for $5,000, due in four months after date. In the
body of the note was a specified list of nine other notes for varying

amounts and with varying due dates. The chattel-mortgage note also recited that those nine notes were sold and conveyed to the plaintiff bank on condition that if the principal note was paid the mortgage covering the nine collateral notes would be void, otherwise in full force, and the mortgagee was authorized to "take said property by virtue of this mortgage and sell same at private or public sale, as by law provided. The proceeds of such sale, after deducting all expenses, to be applied on this note and mortgage."

The note of present concern which was one of the nine notes mortgaged as above, was dated April 21, 1932, for $1,037.80, payable on or before October 1, 1932. The maker was Emanuel Milberger, and the payees were Frances E. Hill and Everett W. Hill, mother and son.

In the body of the instrument was the following language:

"The drawers, endorsers and sureties hereon jointly and severally guarantee payment of this note at maturity or any time thereafter, waiving demand, protest and notice of nonpayment."

When delivered to the plaintiff bank the following recitals and signatures appeared on the back of the note:

"Pay to The Home State Bank of Russell, Kansas—to be held as collateral to note of Everett W. Hill, in the sum of $5,000, dated May 26, 1932.
                    (Signed)  FRANCES E. HILL.
                              EVERETT W. HILL."

Other details of plaintiff's petition, which included the giving of a renewal note for the principal sum which had grown to $5,200, will need no attention.

Plaintiff brought this action on this *Milberger* note, alleging the default of Everett W. Hill to pay the $5,000 note, the giving of this *Milberger* note and other notes as collateral security thereto and the failure of Milberger to pay this note. Plaintiff prayed judgment against the maker, Milberger, and against Frances E. Hill and Everett W. Hill as endorsers.

Meantime Mrs. Hill died and the administrator of her estate interposed a demurrer to plaintiff's petition. This demurrer was sustained; judgment was entered accordingly; and the bank appeals.

The case turns upon the proper legal significance which should be attached to the recitals and signatures on the back of the *Milberger* note.

The bank contends that they constitute an unqualified and unrestrictive endorsement under the negotiable-instruments act. Coun-

sel for the administrator, appellee, contend that the facts alleged in the petition, together with the recitals on the back of the note over the signature of Frances E. Hill, clearly indicate by appropriate language that Frances E. Hill intended to be bound in another capacity.

Section 70 of the negotiable-instruments act reads:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." (G. S. 1935, 52-604.)

Counsel for the litigants cite many cases which they deem helpful to a correct decision of this case. We have examined all the Kansas cases cited, but few of them have much bearing on the proper legal significance which should be attached to the recitals on the back of the Milberger note, to which Frances E. Hill signed her name. In *Hunter v. Hamilton*, 52 Kan. 195, 34 Pac. 782, the action was for the wrongful sale and disposition of a promissory note which had been pledged as collateral security for an indebtedness owed by the payee to the pledgee. In the course of the opinion this court said:

"The disposition to be made of a pledge, in case of default or in any other contingency, may be controlled by the agreement of the parties, providing such agreement be not fraudulent, is not in contravention of statute, nor against public policy. In the absence of an agreement as to the remedy to be pursued, a pledgee may ordinarily, upon default, sell any chattel deposited with him as a pledge; but a different rule has been held in some courts in respect to a pledge of commercial paper as collateral security for the payment of a debt. By some of the authorities cited, it is held that, without express authority, the pledgee cannot sell the paper, but that it is his duty to collect it when it falls due, apply enough of the proceeds to pay his debt, and then return what remains to the pledgor. (*Trust Co. v. Rigdon*, 93 Ill. 458; *Zimpleman v. Veeder*, 98 Id. 613; *Fletcher v. Dickinson*, 7 Allen, 23; *Roberts v. Thompson*, 14 Ohio St. 1; Dan. Neg. Inst., § 833.) Upon this question there is a diversity of opinion, some of the authorities holding that there are no good reasons to sustain such an exception. (*Porter v. Thompson*, 10 R. I. 1; *Brightman v. Reeves*, 21 Tex. 70; *Davis v. Funk*, 39 Pa. St. 243.) . . . The authorities are uniform upon the question that the disposition to be made of a pledge may be regulated by the contract of the parties." (pp. 198-199.)

In *Blood v. Shepard*, 69 Kan. 752, 757, 77 Pac. 565, one Clark borrowed $2,300 from one Shepard, and to secure its payment the borrower pledged certain bonds which were secured by a real-estate mortgage. Whether the law of pledges or the law of mortgages

should govern was drawn in question. On that subject this court said:

"It must be borne in mind that it was the bonds of the Rosemont Land Company that Mrs. Clark assigned, transferred and delivered to Shepard for the purpose of securing her note. This transaction was a pledge of these bonds and not a mortgage upon the land, and it created the relation of pledgor and pledgee, not of mortgagor and mortgagee. The relation that exists between pledgor and pledgee and mortgagor and mortgagee is entirely different under the law. A pledgee must take possession of his pledge; a mortgagee may not, in the absence of stipulations to that effect. A pledgee may retain possession of his pledge until his debt be satisfied, and is not bound to dispose of the pledge by formal sale, even upon the maturity of his debt, but may, if he choose, have strict foreclosure of his lien by summary sale, upon advertisement. A mortgagee, under our statute, is never entitled to strict foreclosure, but must proceed by proper suit, and await the period of redemption. Were the transaction one involving simply the choses in action, there being no real-estate mortgage securing them, probably there would be no question of the character of the holding or the right of the pledgee; but these bonds of the Rosemont Land Company were secured by mortgage."

In *Briggs v. Latham*, 36 Kan. 205, 13 Pac. 129, a negotiable promissory note was transferred by P. D., an assignee thereof, by writing the following words upon the note, to wit: "I assign this note to the Roodhouse Bank, as collateral security.—P. D." The question whether the note was properly negotiated by endorsement, within the meaning of the statutes and commercial law, was discussed, but not decided.

In the case at bar the collateral notes were mortgaged to the bank as the recitals of the principal note of $5,000 expressly stated. In *Milling Co. v. De Witt*, 65 Kan. 665, 70 Pac. 647, cited in *Bank v. Bank*, 116 Kan. 303, 309, 226 Pac. 998, it was held that the usual legal significance of a commercial endorsement could be limited by a contemporaneous written instrument. (See, also, *Fox v. Cipra*, 5 Kan. App. 312, 48 Pac. 452; *Iron Works v. Paddock*, 37 Kan. 510, 15 Pac. 574; *Hayter v. Dinsmore*, 125 Kan. 749, 265 Pac. 1112.) Here, it should not be overlooked that the chattel-mortgage note and the recitals on the back of the *Milberger* note were contemporaneous written instruments which specifically referred to each other and related to the same transaction.

The briefs of counsel devote much learning to the question whether the recitals on the back of the *Milberger* note destroyed its negotiability. If the bank had sold the note, as its mortgage authorized it to do, this question would become important in the hands of the

bank's vendee. But here the bank did not attempt to negotiate it; it retained it and sued on it. Between the original parties to a promissory note and their privies, the binding force of the obligation evidenced by the note is not affected by the question whether it is negotiable or not. Defenses would not be cut off by the note's negotiability; and if there were no defenses, the fact that the note was nonnegotiable would not relieve the obligor of his liability thereon. And so we must simply recur to the main question: Did the recitals and signature of Frances E. Hill together with the recitals of the contemporaneous chattel-mortgage note and the allegations of plaintiff's petition admitted by the demurrer bind Frances E. Hill as an endorser, or did these considerations clearly indicate that she intended merely to conditionally sell and convey her interest in the *Milberger* note to the bank as mortgagee, with such rights thereto as the contract obligation set down in the plain terms of the chattel-mortgage note conferred?

In the light of all the circumstances we think that the recitals on the back of the collateral note to which Frances E. Hill placed her signature clearly expressed her intention to be held as a conditional assignor of her interest only, and not as an unqualified endorser.

The judgment of the district court is affirmed.